## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Maryan H. S.,                                        Case No. 22-cv-767 (TNL)

       Plaintiff,

v.                                                                **ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

       Defendant.

---

Mahesha P. Subbaraman, Subbaraman PLLC, 222 S. 9th Street, Suite 1600, Minneapolis, MN 55402; Asha Sharma and Paul R. McGrath, Disability Partners PLLC, 2579 Hamline Ave. N., Suite C, Roseville, MN 55113 (for Plaintiff); and

Michael Moss, Special Assistant United States Attorney, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235 (for Defendant).

---

## I. INTRODUCTION

Plaintiff Maryan H. S. brings the present case, contesting Defendant Commissioner of Social Security's denial of her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") under Title XVI of the same, 42 U.S.C. § 1381 *et seq.* The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

This matter is before the Court on the parties' cross motions for summary judgment. ECF Nos. 28, 32. Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 28, is

**DENIED**, and the Commissioner's Motion for Summary Judgment, ECF No. 32, is **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI asserting that she has been disabled since October 2013 due to various leg and foot ailments.  Tr. 237.  She later amended her onset date to October 2015.  ECF 17-1 at 229.  Plaintiff's applications were denied initially and again upon reconsideration.  Tr. 98, 119.

Plaintiff appealed the reconsideration of her DIB and SSI determinations by requesting a hearing before an administrative law judge ("ALJ").  Tr. 137.  The ALJ held a hearing in March 2018 and issued an unfavorable decision.  Tr. 17, 53.  Thereafter, Plaintiff requested review from the Appeals Council, which was denied.  Tr. 1.

In January 2019, Plaintiff filed a complaint in this Court challenging the ALJ's decision.  Tr. 776.  While that case was pending, Plaintiff filed a second application for disability benefits.  Tr. 1037.  The case in this Court was assigned to Magistrate Judge Thorson.  *See Maryan H. S. v. Saul*, No. CV 19-23, 2020 WL 1470970 (D. Minn. Mar. 26, 2020).  The parties filed cross motions for summary judgment.  *Id.* at *1.  Concluding that "the ALJ did not adequately explain the basis for his conclusions," Judge Thorson granted Plaintiff's motion for summary judgment and remanded the case for further proceedings.  *Id.* at *4.

In June 2020, the Appeals Council vacated the ALJ's 2018 decision and ordered consolidation of Plaintiff's 2015 and 2019 applications.  Tr. 796.  In December 2021, the ALJ held a hearing on the consolidated claims.  Tr. 712.  In January 2022, he issued a

decision finding that Plaintiff was not disabled prior to October 20, 2020, but became disabled on that date. Tr. 700.

### III. ALJ'S DECISION

In relevant part, the ALJ on remand found that Plaintiff had the residual functional capacity ("RFC") to perform light work,[1] with the exception that Plaintiff cannot "lift[] and carry[] 20 pounds occasionally" or "10 pounds frequently," "can stand and walk for 2 hours out of an 8-hour workday," can "kneel and crouch occasionally" but cannot crawl, and "would require use of a cane for standing and for walking." Tr. 685. Based on Plaintiff's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that Plaintiff was capable of performing a number of jobs in the national economy. Tr. 698-99. The ALJ thus concluded that, prior to October 20, 2020, Plaintiff was not disabled. Tr. 700. Plaintiff's age category changed, however, when she turned 50 on October 20, 2020. *Id.* The ALJ applied the Medical-Vocational Guidelines and determined that she became disabled as of that date. *Id.*

Plaintiff challenges the ALJ's determination that she was not disabled prior to October 20, 2020. She asserts that the ALJ erred in finding that she had the RFC to perform

---

[1] As set forth in the regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); *accord* 20 C.F.R. § 416.967(b).

light, rather than sedentary,[2] work. Plaintiff also asserts that the ALJ failed to follow Judge Thorson's instructions on remand, and that he should have applied the education categories and grid rules that were in effect when her claims were first filed.[3] As will be discussed below, the rules were amended in April 2020 to credit no longer a claimant's inability to communicate in English toward a finding of disability.[4] Plaintiff, who does not read or write in English, argues that a finding of sedentary RFC and inability to communicate in English would have demanded a determination that she was disabled prior to October 2020.

## IV. ANALYSIS

### A. Legal Standard

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see, e.g.*, *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (defining "substantial evidence as less than a preponderance but enough

---

[2] As set forth in the regulations,

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); *accord* 20 C.F.R. § 416.967(a).
[3] *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.00(h)(1); 20 C.F.R. pt. 404, subpt. P, app. 2, rules 201.17-201.22.
[4] *See* Removing Inability To Communicate in English as an Education Category, 85 Fed. Reg. 10586-01 (Feb. 25, 2020).

that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

### 1.  Disability

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). This standard is met

when a severe physical or mental impairment, or impairments, renders the individual unable to do his previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his age, education, and work experience.  42 U.S.C. § 423(d)(2)(A); *accord* 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

Disability is determined according to a five-step, sequential evaluation process.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) []he was severely impaired; (3) h[is] impairment was, or was comparable to, a listed impairment; (4) []he could perform past relevant work; and if not, (5) whether []he could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  In general, the burden of proving the existence of disability lies with the claimant.  20 C.F.R. §§ 404.1512(a), 416.912(a).

## 2.  Residual Functional Capacity

A claimant's "residual functional capacity is the most [he] can do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1); *accord* 20 C.F.R. § 416.945(a)(1); *see McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) ("A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence."); *see also, e.g.*, *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022).  "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."  *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F.4th at 1360.

At the same time, the residual-functional-capacity determination "is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Norper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *see Perks*, 687 F.3d at 1092; *see also* 20 C.F.R. §§ 404.1546(c), 416.946(c). "An ALJ determines a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or her] limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation omitted); *accord Schmitt*, 27 F.4th at 1360; *Norper*, 964 F.3d at 744-45. As such, there is no requirement that a residual-functional-capacity determination "be supported by a specific medical opinion." *Schmitt*, 27 F.4th at 1360 (quotation omitted). Nor is an ALJ "limited to considering medical evidence exclusively." *Id.* (quotation omitted). Accordingly, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F.4th at 1360; *see* 20 C.F.R. §§ 404.1546(c), 416.946(c). Plaintiff bears the burden to establish her RFC. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).

### B.  Judge Thorson's Instructions on Remand

For a job category to be appropriate, a claimant "must be able to perform substantially all of the exertional and nonexertional functions required in work at that level." In his first decision, the ALJ determined that Plaintiff could stand and walk for 2 hours out of an 8-hour workday, frequently operate foot controls bilaterally, and had the RFC to perform light work. Tr. 25. As Judge Thorson noted, light work "requires a good

deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." *Maryan H. S. v. Saul*, 2020 WL 1470970, at *4. It also requires "frequent lifting or carrying," which "necessarily requires one to be on her feet" for more than two hours. *Id.* at *3.

Determining that Plaintiff fell between the light and sedentary exertional levels, the ALJ consulted a vocational expert ("VE"). *Id.* at *4. But the purportedly light jobs about which the VE testified were "more properly classified as sedentary work" after "accommodating for Plaintiff's limitations." *Id.* Because the ALJ did not adequately explain how he found that Plaintiff could perform substantially all the exertional functions of light work, Judge Thorson remanded "to allow the ALJ to explain the basis for his conclusions as to Plaintiff's exertional capacity." *Id.* Specifically, "the ALJ must be able to reconcile Plaintiff's standing/walking limitations and lifting/carrying requirements with the appropriate exertional classification, i.e., sedentary or light." *Id.* And, in so doing, "the ALJ should consider whether Plaintiff's classification accurately reflects her exertional capacity for jobs when accommodating her limitations." *Id.* "The grid application of sedentary or light exertional capacity is of the utmost importance because the application is outcome determinative." *Id.*

The ALJ did not follow these instructions. On remand, he again determined that Plaintiff had the residual functional capacity to perform light work, but that her "ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations." Tr. 698. Finding the same limitations, he again consulted a VE

"[t]o determine the extent to which these limitations eroded the unskilled light occupational base."  Tr. 698-99.  This exchange followed:

> Q: All right. Based on these limitations, would there be any light work?
>
> A: No, Your Honor.
>
> Q: Okay. Is that because of the standing and walking restriction?
>
> A: That is correct, Your Honor.
>
> Q: And that was at two hours, correct?
>
> A: That is correct.
>
> Q: Would there be any sedentary work with these limitations?

Tr. 737.  The VE then testified that three jobs, all classified as sedentary, would be available to someone with Plaintiff's limitations.   Tr. 737-38.   Thus, the ALJ determined that Plaintiff cannot perform the lifting, standing, or walking requirements of light work, and that all of the representative occupations for someone with Plaintiff's limitations are sedentary.  The ALJ did not explain how these findings led to a determination that Plaintiff has a light, rather than sedentary, exertional capacity.

The ALJ certainly included far more details regarding the medical basis for his determinations of Plaintiff's limitations on remand.  But Plaintiff did not challenge those determinations; she challenged his conclusion that they place her in the light exertional category.  The ALJ has not explained how his determinations are consistent with a finding of light exertional capacity.  This indicates a misunderstanding of the Court's instructions on remand.  And, as Plaintiff asserts, "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further

judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).  But it is also true that the Court need only reverse if the error was not harmless.  *See Tristan J. v. Kijakazi*, No. 21-CV-248, 2022 WL 3701450, at *5 (D. Minn. Aug. 26, 2022) (citing *Samons v. Astrue*, 497 F.3d 813, 821-22 (8th Cir. 2007)) ("An ALJ's error requires reversal and remand only if the error prejudices the claimant.").

The question, then, is whether the ALJ's failure to comply with the instructions on remand was not harmless.  The remand instructions focused on the RFC determination, tasking the ALJ with reconsidering the appropriate exertional classification.  Plaintiff argues that the ALJ should have found that she had the RFC to perform sedentary work.  She also contends that the ALJ should have applied the old rule crediting a claimant's inability to communicate in English toward a finding of disability.  Taken together, these would have resulted in a disability finding.  The Commissioner argues that the ALJ properly applied the new rule, and as a result, the RFC determination would not have changed the outcome.  For the reasons set forth below, the Court agrees with the Commissioner.  Even assuming the ALJ's failure to follow instructions on remand resulted in the incorrect RFC determination, any error was harmless because he properly applied the new grid rules which demanded a finding of not disabled either way.

### C.  The ALJ Properly Applied the New Rule

#### 1.  Changes to Education Category

Prior to April 2020, the regulations required the Commissioner to evaluate a claimant's education through the use of five categories, one of which was a claimant's "[i]nability to communicate in English."  20 C.F.R. § 404.1564(b)(5) (2019).  The grid

rules reflected this requirement in Rule 201.17, which required a finding of disability for claimants aged 45 to 49 who were "illiterate or unable to communicate in English" and limited to sedentary work as a result of their impairments. 20 C.F.R. Part 404, Subpart P, Appendix 2 § 201.17 (2019). In February 2020, however, the Commissioner finalized its proposed regulations to eliminate the education category "inability to communicate in English." 85 Fed. Reg. 10586-01 (Feb. 25, 2020).

The Commissioner announced that the final rule would become effective on April 27, 2020, and would apply to new applications, pending claims, and continuing disability reviews. *Id.* The Commissioner clarified that the new rule would be used "on and after its effective date in any case in which we make a determination or decision, including CDRs, as appropriate." *Id.* at n.95.

Judge Thorson remanded this case in March 2020, before the new rule went into effect. She concluded remand was necessary because the determination of sedentary or light exertional capacity "is outcome determinative." *Maryan H. S. v. Saul*, 2020 WL 1470970, at *4. And, when her opinion was issued, it was. Under the rule that existed at the time, Plaintiff's inability to communicate in English was an education factor represented on the grid rules. If she had a light RFC, a finding of "Not disabled" would be appropriate.[5] But, if Plaintiff had a sedentary RFC, the grid rules would have demanded a finding of "Disabled."[6]

---

[5] *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Tbl. 2 (2019).
[6] *See* 20 C.F.R. pt. 404, subpt. P, app. 2, rule 201.17 (2019).

In June 2020, nearly two months after the new rule went into effect, the Appeals Council ordered the ALJ to consolidate Plaintiff's claims, offer her the opportunity for a new hearing, and issue a new decision on the consolidated claims. Tr. 796. The ALJ held a hearing in December 2021 and issued his decision in January 2022. In that decision, the ALJ determined that, because the Appeals Council had vacated the prior ALJ decision and ordered him to consolidate the claims and issue a new decision, Plaintiff's consolidated claim was pending when the new rule became effective on April 27, 2020. Tr. 675-76. He therefore applied the new rule. *Id.*

Plaintiff had a high school education in Somalia, and now that her inability to communicate in English is not a consideration under the grid rules, exertional capacity is no longer outcome determinative; Plaintiff must be found "not disabled" under the grid rules regardless of whether she has a sedentary or light RFC. The new rule thus vitiated the purpose of remand, because the ALJ's determination of Plaintiff's exertional capacity cannot change the outcome.

### 2.   The ALJ's Decision Was Not an Impermissible Retroactive Application

When the Appeals Council vacates an ALJ's first decision after the effective date of an amended rule, a plaintiff's case is still considered pending for purposes applying the rule. *See, e.g.*, *Ogannes B. v. Kijakazi*, No. CV 22-325WES, 2023 WL 5561108, at *1 n.3 (D.R.I. Aug. 29, 2023) (noting that because "[t]he Appeals Council's remand order issued on May 12, 2020," a month after the rule went into effect, "Plaintiff's case was still pending on the effective date of the rule change"). Plaintiff does not appear to dispute that her case was "pending" when the rule went into effect. Rather, she argues that the SSA never

explicitly provided that the new rule should apply to cases like hers, and the ALJ's decision to apply the amended rule therefore constituted impermissible retroactive application of an SSA regulation.

Plaintiff first contends that the ALJ's decision to apply the amended rule contravenes the Eighth Circuit's holding in *Ingram v. Barnhart*, 303 F.3d 890 (8th Cir. 2002). There, the plaintiff's claim for disability based on obesity was denied, remanded, and denied again. After the ALJ's second denial, the SSA revised its rules regarding claims of disabling obesity. When the case came before the district court for the second time, the court "determined for itself that the new obesity regulations applied to [the plaintiff's] claims," despite both parties agreeing the old rule should apply. *Id.* at 894. The Eighth Circuit held that because "a court should not decide matters of agency policy," the district court abused its discretion in determining that the new rule should be applied retroactively.

This case is unlike *Ingram* for two primary reasons. First, the district court there substituted its own judgment for that of the agency, effectively usurping the agency's authority to decide matters of policy. But here, the agency already determined that the new rule would apply to all cases pending on its effective date. Were this Court to grant Plaintiff's motion and remand with instructions to apply the old version of the rule, that decision would itself contravene *Ingram*'s admonition to leave policy matters to the agency. Second, the rule at issue in *Ingram* was changed *after* the ALJ issued his decision on remand. Thus, the ALJ had no opportunity to decide which rule was appropriate; the court made that decision for him. Here, the ALJ explicitly determined that, because the prior decision had been vacated and the claim was pending on the effective date of the new

rule, he should apply that new rule. This was consistent with the language of the regulation, which clarified that the new rule would apply to "pending" claims and should be used "in any case in which we make a determination or decision." 85 Fed. Reg. 10586-01 at n.95 (Feb. 20, 2020).

Plaintiff further argues that the ALJ's decision to apply the amended rule constitutes impermissible retroactive application of a regulation: "ALJ Kimball's enforcement of new Rule 201.17 against Plaintiff was retroactive, 'attach[ing] new legal consequences to events completed' before the rule's April 2020 effective date." ECF No. 34 at 15 (quoting *Vartelas v. Holder*, 566 U.S. 257, 273–74 (2012)). Because the ALJ assessed Plaintiff's claim after the rule became effective, this argument must fail. The rule change affected how ALJ's perform their disability analysis.[7] Thus, "it is the application of the five-step process that the regulatory change is directed toward, not the substantive basis for disability eligibility." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 649 (6th Cir. 2006). It was not an impermissible retroactive application for the ALJ to apply the new rule, because it "is a rule of adjudication and therefore has its effect on claims at the time of adjudication." *Id.*

The Commissioner's statements support this interpretation. In finalizing the revised regulation, the Commissioner noted: "we no longer consider English proficiency to be the best proxy for assessing an individual's education level as part of our disability determination process." 85 Fed. Reg. 10586-01 (Feb. 20, 2020). The goal of the revision

---

[7] "When this final rule becomes effective, we will no longer consider whether an individual is able to communicate in English at the fifth and final step of the sequential evaluation process." 85 Fed. Reg. 10586-01 at n.95 (Feb. 20, 2020).

was to "better assess the vocational impact of education in the disability determination process, in a manner consistent with the current national economy." *Id.* The activity subject to the revised rule was the adjudication and assessment of disability claims, not the claims themselves. Accordingly, the ALJ's decision to apply the new rule to Plaintiff's pending claim was supported by the agency's own interpretation of the regulation and is consistent with subsequent decisions in other courts.[8]

### D. Harmless Error

Having concluded the ALJ appropriately applied the new rule, the Court now addresses the question of harmless error. Plaintiff alleges that the ALJ (1) failed to comply with instructions on remand, and (2) erred in finding that she has a residual functional capacity to perform light, rather than sedentary, work.

### 1. Failure to Comply with Instructions on Remand

As addressed above, the Court agrees that the ALJ did not adequately "explain the basis for his conclusions as to Plaintiff's exertional capacity" as instructed on remand. *Maryan H. S. v. Saul*, 2020 WL 1470970, at *4. Plaintiff contends that such a failure to follow instructions on remand is "not subject to harmless error analysis." ECF No. 29 at 14 (quoting *Cynthia O. v. Comm'r, Soc. Sec. Admin.*, No. 6:21-CV-01452-HL, 2022 WL 4547363, at *4 (D. Or. Sep. 29, 2022)). The Commissioner counters that, "as the party challenging the Commissioner's decision, Plaintiff bears the burden of showing that any

---

[8] *See, e.g.*, *Pichardo v. Comm'r of Soc. Sec.*, No. 21-CV-06873 (SDA), 2023 WL 2596970, at *20 (S.D.N.Y. Mar. 22, 2023) (determining that the ALJ on remand was not required to assess the plaintiff's English ability, even though the bulk of the proceedings had occurred before the amendment went into effect); *Gina C. v. Comm'r of Soc. Sec. Admin.*, No. 3:21CV00423(SALM), 2022 WL 167922 (D. Conn. Jan. 18, 2022) (same).

such alleged error was harmful." ECF No. 33 at 7 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

The Commissioner is correct. An ALJ's failure to follow remand instructions is not immune from the harmless error analysis. Controlling authority supports only that "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886, 109 S. Ct. 2248, 2254–55, 104 L. Ed. 2d 941 (1989). Legal errors are subject to the harmless error analysis. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) (conducting harmless error analysis after finding legal error); *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (same); *Cuthrell v. Astrue*, 702 F.3d 1114 (8th Cir. 2013) (same). The ALJ did not satisfy Judge Thorson's instructions on remand, but this Court will not reverse on that basis alone. *See Shinseki*, 556 U.S. at 409 (noting that "reversing for error 'regardless of its effect on the judgment'" is "the very criticism that spawned the harmless-error doctrine").

## 2. The Grid Rules Lead to a Finding of Not Disabled Under Both Sedentary and Light RFC

Plaintiff asserts that the ALJ erred in finding that she had the residual functional capacity to perform light work rather than sedentary work. The Court would normally assess whether the ALJ's RFC determination was supported by substantial evidence. However, because Plaintiff concedes that her limitations substantially reduced her

exertional capacity such that a sedentary RFC would be appropriate,[9] a substantial evidence analysis is unnecessary. Even if the ALJ had determined that Plaintiff could perform only sedentary work, he would have reached a finding of not disabled under the grid rules. Under the new rule, Plaintiff's inability to communicate in English is no longer an education consideration. Without that consideration, the grid rules for both sedentary and light RFCs direct a finding of not disabled.

*Byes* is instructive here. In that case, the district court found that substantial evidence did not support a finding that the plaintiff could perform light work. *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). As a result, the ALJ applied the incorrect grid rule—the rule for light, rather than sedentary, work. However, because the plaintiff would have been found "not disabled" even under the grid rules for sedentary work, the error was harmless. The Eighth Circuit agreed, holding that such an error is harmless unless the plaintiff can "provide some indication that the ALJ would have decided differently if the error had not occurred." *Id.*; *see also Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (holding that there was not substantial evidence to support the ALJ's finding of literacy, but the error was harmless, because "[w]hether this case is considered under rule 201.23 ("Illiterate") or rule 201.24 (limited education), [the plaintiff] would not be found disabled under the Grid Rules").

---

[9] *See, e.g.*, ECF No. 29 at 19 ("Because Plaintiff's limitations significantly reduced her exertional capacity to sedentary work, SSA's sedentary-work grid properly applied to Plaintiff."); *id.* at 15 ("Plaintiff's limitations significantly reduce her exertional capacity to sedentary."); ECF No. 34 at 5 ("Under Judge Thorson's instructions, the result is a sedentary RFC assessment.").

Plaintiff contends that the correct RFC finding would have been one for sedentary work. When an ALJ's findings "as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). With Plaintiff's age, education, work experience, and a sedentary RFC, the rules directed a finding of "not disabled" prior to her 50th birthday in October 2020.[10] Thus, because "the ALJ would have reached the same decision denying benefits" either way, any error in finding Plaintiff had a light RFC was harmless. *Brueggemann*, 348 F.3d at 695; *see also Hensley*, 352 F.3d at 357.

### 3. The Vocational Expert Testified That Jobs Exist at the Sedentary Level

The Eighth Circuit Court of Appeals has "consistently held that if substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony." *Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1004 (8th Cir. 2018) (quotation omitted); *see also, e.g., Tywford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 519 (8th Cir. 2019); *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010). "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quoting *Hinchey v. Shalala*, 29

---

[10] *See* 20 C.F.R. pt. 404, subpt. P, app. 2, rules 201.17-201.22.

F.3d 428, 432 (8th Cir.1994)).   "A vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence."   *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005).

Here, the ALJ's finding that Plaintiff was not disabled prior to October 2020 was supported by the VE's testimony that significant jobs existed in the national economy. When questioning the VE, the ALJ included those impairments which were substantially supported by the record, such as Plaintiff's ability to walk for 2 hours out of an 8-hour workday.   Plaintiff does not dispute these limitations.[11]   The ALJ asked the VE whether there were any light jobs Plaintiff could perform, and the VE responded that, "because of [Plaintiff's] standing and walking restriction," there were not.   Tr. 737.   The VE then identified three sedentary jobs that someone with Plaintiff's limitations could perform.   Tr. 737-38.   Plaintiff challenges neither the hypotheticals posed to the VE, nor the jobs cited by the VE.   Accordingly, the ALJ was entitled to rely on the vocational expert's testimony regarding the availability of sedentary jobs, and there was substantial evidence to support his finding that Plaintiff was not disabled.   *Goff*, 421 F.3d at 794; *Moore*, 623 F.3d at 605. Because the ALJ relied on substantial evidence in determining Plaintiff's limitations, and the VE testified that there was work available for someone with those limitations, any misclassification of her RFC was harmless error.

In sum, the ALJ appropriately applied the new rule removing the ability to communicate in English from the education categories.   He was instructed to provide a

---

[11] *See Maryan H. S. v. Saul*, 2020 WL 1470970, at *3.

more comprehensive explanation of his RFC determination on remand, and he did not do so.  This error, however, did not change the outcome.  The new rule meant that Plaintiff would have been found not disabled regardless of whether the ALJ determined she had a sedentary or light RFC.  Because the instructions on remand were focused on that now nonessential determination, the ALJ's failure to comply with the letter of those instructions did not affect his ultimate disability determination.  Additionally, despite classifying Plaintiff as capable of performing light work, the ALJ elicited testimony from the VE that there were substantial jobs at the sedentary level for someone with Plaintiff's limitations.  Plaintiff has not met her burden to "provide some indication that the ALJ would have decided differently if the error had not occurred."  *Byes*, 687 F.3d at 917.  Accordingly, the errors she alleges were harmless, and Plaintiff's motion for summary judgment is denied.

[Continued on next page.]

## V. ORDER

Based upon the record, memoranda, and the proceedings herein, and for the reasons

stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 28, is **DENIED**.

2. The Commissioner's Motion for Summary Judgment, ECF No. 32, is **GRANTED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: September____28____, 2023          _____*s/ Tony N. Leung*_____
                                          Tony N. Leung
                                          United States Magistrate Judge
                                          District of Minnesota


                                          *Maryan H. S. v. Kijakazi*
                                          Case No. 22-cv-767 (TNL)